**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LETICIA CONTRERAS,<br><br>          Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>          Defendant. | Case No.: 1:15-cv-01483-BAM<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

**INTRODUCTION**

Plaintiff Leticia Contreras ("Plaintiff"), appearing *pro se*, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income ("SSI") under Title XVI and disability insurance benefits ("DIB") under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe. Having considered the moving papers and the Court's file, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

///

1

**FACTS AND PRIOR PROCEEDINGS**

**A.     Overview of the Administrative Proceedings**

This is Plaintiff's second claim for Social Security benefits. Plaintiff filed prior applications for DIB and SSI payments, which were denied on October 13, 2011. AR 148, 166, 385-94. Plaintiff did not appeal the denial. AR 148, 166. On January 31, 2012, Plaintiff subsequently filed the instant applications for DIB and SSI, alleging disability beginning January 9, 2012, due to injuries to her neck, back, knee, and right foot, depression, post-traumatic stress disorder (PTSD), anxiety, headaches, early signs of carpal tunnel, and nerve damage. AR 395-406, 455. Plaintiff's claims were denied initially on May 29, 2012 (AR 147-201), and upon reconsideration on January 17, 2013. AR 216-70. After an administrative hearing at which Plaintiff was represented by an attorney, the Administrative Law Judge ("ALJ") issued a decision on February 28, 2014 finding that Plaintiff was not disabled. AR 90-102. Plaintiff requested a review of the ALJ's decision, submitting new evidence, and the Appeals Council denied Plaintiff's request. AR 1-86. This appeal followed.

**B.     Plaintiff's Background and Testimony**

A hearing was held on January 22, 2014 in Fresno, CA. AR 112. Plaintiff was represented by attorney Gina Fazio. AR 112. A vocational expert, Cheryl Chandler (the "VE"), also provided testimony. AR 112.

At the outset of the hearing, the ALJ questioned Plaintiff at length about a surveillance video taken of Plaintiff before her disability onset date. AR 118-123. The ALJ explained to Plaintiff that as a part of a workers' compensation investigation, she was secretly recorded participating in a yard sale with her family. AR 119. In the video, Plaintiff was seen bending, stooping and lifting items including a small child weighing approximately 18 pounds. AR 120. Plaintiff also appeared to be moving her neck with no difficulty. AR 121. Plaintiff explained that at the time the video was taken she was taking several prescription medications and attending physical therapy which alleviated her back and neck pain. AR 121-122.

Plaintiff was born on June 23, 1969 making her 42 years old at the time of the hearing. AR 123. She is approximately five feet and eight inches tall and weighs 195 pounds. AR 123. Plaintiff has a high school education, and completed three and half years of college. AR 123. She is single and

lives in a house with her 20-year-old daughter and 16-year-old son. AR 124. Plaintiff has a driver's license and generally drives about once a week. AR 124.

When asked about her impairments, Plaintiff testified that her most severe pain is caused by headaches, neck pain and back pain, but she also "deals with knee pain." AR 125.  Pain medication generally helps with her neck and back pain. AR 126. Plaintiff also claims she has carpal tunnel syndrome, post-traumatic stress disorder, and that she suffers from daily headaches that last from 1-2 hours a day. AR 126. Plaintiff testified that her headaches and post-traumatic stress disorder began after being involved in an accident in 2009. AR 134, 136. Although not explained in detail during the administrative hearing, Plaintiff frequently referenced a pedestrian vs. motor vehicle accident that occurred on October 19, 2009. AR 632. In the accident, Plaintiff was clipped on the side of her body by a car going 5-10 mph in the parking lot of a Fresno County office building. AR 632. Plaintiff sprained her ankle; she was given a brace, prescribed pain medication and discharged on the same day. AR 631. Overall, based on her various impairments, Plaintiff testified she can lift 10-15 pounds, stand and walk for 15 minutes before needing a break, and sit comfortably for about 30 minutes. AR 127-128.

When asked about her daily activities, Plaintiff testified she attends to her own personal needs. AR 131. She cooks about six to eight times a week, washes dishes and her own clothing. AR 131, 136. She watches television approximately two hours a day; and attends counseling about 2-3 times a month. AR 132-135.

Thereafter, the ALJ heard testimony from a vocational expert who testified that based on the limitations adopted by the ALJ, Plaintiff could perform work as it exists in the national economy. AR 138-146.

**Medical Record**

The entire medical record was reviewed by the Court. AR 536-1485. The medical evidence will be referenced below as necessary to this Court's decision.

## THE ALJ'S DECISION

Using the Social Security Administration's five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 9, 2012, her alleged

onset date. AR 92. Second, the ALJ determined that Plaintiff had the following severe impairments: status post two fusions of the cervical spine, multi-level degenerative disc disease of the lumbar spine, urinary incontinence, bilateral carpal tunnel syndrome, status post right hand release surgery, adjustment disorder, major depressive disorder, generalized anxiety disorder, and acute stress reaction vs. posttraumatic stress disorder. AR 82. Third, the ALJ concluded that Plaintiff did not have a listed impairment or combination of impairments. AR 93-94.

After carefully reviewing the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), lifting and carrying 20 pounds occasionally and 10 pounds frequently; and siting, standing, and walking 6 hours in an 8-hour day. AR 94-101. The ALJ also found Plaintiff could frequently handle, finger, and feel bilaterally as well as balance, stoop, kneel and climb ramps or stairs, but never climb ladders, ropes, or scaffolds. AR 94. Plaintiff can occasionally crouch, and reach overhead with the dominant right upper extremity. She is limited however to simple, routine, and repetitive tasks. AR 94. At the fourth step, the ALJ found Plaintiff could not perform any of her past relevant work. AR 101. However, at the fifth step, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy. AR 101-102. Therefore, the ALJ found that Plaintiff was not disabled. AR 102.

## DISABILITY STANDARD

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

///

///

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. section 405(g), a Court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006) (*citing Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. *Robbins*, 466 F.3d at 882 (*citing Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. *Robbins*, 466 F.3d at 882 (*citing Flaten*, 44 F.3d at 1457).

**DISCUSSION[1]**

Liberally construed, Plaintiff raises four challenges to the ALJ's decision in her opening and reply briefs. (Docs. 19, 22). Plaintiff contends: (1) the ALJ erred in evaluating the medical opinion evidence; (2) the evidence submitted to the Appeals Council warrants reversal; (3) the ALJ improperly discounted Plaintiff's testimony; and (4) the ALJ erred in finding Plaintiff could perform other work. (Docs. 19, 22).

**1.    The ALJ Properly Evaluated the Medical Evidence**

Plaintiff's first argument contends that the ALJ erred in affording little weight to the opinion of physician, Jeffrey M. Lundeen M.D. The Commissioner responds that the ALJ properly weighed the evidence that overwhelmingly demonstrated that Plaintiff was not disabled.

///

---

[1] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

### A. Dr. Lundeen

In his capacity as a qualified medical examiner for workers' compensation, Jeffrey M. Lundeen, M.D., an orthopedist, was an examining physician. He evaluated Plaintiff at least three times and offered his opinion on Plaintiff's physical condition and ability to perform work following her work related injuries dating back to 2005 including: (1) cumulative/overuse trauma to Plaintiff's neck and hands which caused numbness and tingling; and (2) Plaintiff's injury involving the hydraulic lift of her office chair which dropped suddenly causing "a jolt" to Plaintiff's neck. AR 813,1476-1481. Over several evaluations between May 4, 2009 and December 10, 2013, Dr. Lundeen generally opined that Plaintiff should avoid heavy lifting, running, jumping, repetitive movements of her neck, and repetitive grasping and gripping with both hands. AR 97, 124-36, 471-72. He opined that based on Plaintiff's impairments, she would require a five-minute break after every 30-minute work interval. AR 1482.

On April 4, 2012, Dr. Lundeen also submitted a supplemental report amending his previous medical opinions based on his review of "a subrosa video (a covert surveillance video done in conjunction with [Plaintiff's] workers' compensation claim." AR 1197. According to Dr. Lundeen, he described the video as showing Plaintiff setting up for a garage sale, performing "repetitive bending, stooping, and lifting activities as well as repetitive carrying activities." AR 1197. Plaintiff lifted and carried a "three-level shelf loaded with small garage sale items" spent "the majority of time during the garage sale on her feet," and performed repetitive reaching activities with both arms." AR 1197. At one point, Plaintiff "pick[ed] up a young child initially with both arms and then holds the child in her left arm for a prolonged period of time;" Dr. Lundeen estimated the child weighed approximately 25 pounds. AR 1198. He noted that, in the video, Plaintiff "appears in no distress whatsoever and appears to be performing the garage sale activities quite easily." AR 1198. As a result of viewing the video, Dr. Lundeen changed his previous opinions to find that Plaintiff did not have a pain related impairment. AR 96, 1198.

In weighing the medical evidence, the ALJ afforded Dr. Lundeen's overall opinions little weight. AR 96. The ALJ explained that the asserted limitations found by Dr. Lundeen were inconsistent with Plaintiff's demonstrated abilities in the surveillance video, as well as the doctor's

own clinical findings, and unsupported by the record. AR 95-97. The ALJ also found that Dr. Lundeen's findings were inconsistent with Plaintiff's stated daily activities. AR 96-97.

### B. Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). *See also*, 20 C.F.R. § 404.1527(c)(1)-(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2).

### C. Analysis

Plaintiff primarily argues that the ALJ's reason for rejecting the opinion of Dr. Lundeen is legally insufficient. According to Plaintiff, the ALJ should have adopted Dr. Lundeen's opinion despite the surveillance video because the video was taken in July 2011, six months before her alleged disability onset date. Plaintiff also generally argues that Dr. Lundeen's findings are supported by the record. Plaintiff's arguments are not persuasive. Even ignoring the ALJ's findings regarding the

7

surveillance video, the ALJ gave several other specific and legitimate reasons to reject Dr. Lundeen's opinion. That rejection is also supported by the great weight of the evidence as follows.

First, the ALJ found that Dr. Lundeen's stated limitations were inconsistent with and unsupported by the record which showed largely normal findings. In examinations by Dr. Lundeen, Plaintiff was reported as having a normal gait and normal range of motion with full motor strength in the bilateral extremities. AR 97, 1238, 1266, 1269 1331-32. In a medical examination by another physician, Plaintiff was able to "easily" get up and out of the chair in the waiting room, walk at a brisk pace back to the exam room, "sit completely comfortably," and was able to get on and off the exam table without difficulties. AR 1236. She also demonstrated good manual dexterity in her fingertip to thumb tip opposition and could easily pick up a paperclip off the table and manipulate her shoes and socks. AR 1236-37. She was shown to have full muscle bulk and tone in her upper and lower extremities, had intact sensation in all extremities, and normal reflexes. AR 1238. This review of the record demonstrates that substantial evidence supports the ALJ's finding that Dr. Lundeen's workers' compensation reports were not supported with diagnostic findings or objective evidence to support the level of impairment alleged. The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ was therefore justified in finding that Dr. Lundeen's opinions were undermined by the objective medical reports in the record.

The ALJ also found that Dr. Lundeen's opinion was internally inconsistent with the doctor's own clinical findings. AR 96-97. This is a specific and legitimate reason to discount a physician's opinion. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (ALJ properly rejected medical opinion where doctor's opinion was contradicted by his own contemporaneous findings). For example, on one hand, Dr. Lundeen indicated Plaintiff should avoid repetitive and/or forceful gripping, grasping, and torqueing activities with both hands, but by his own report Plaintiff demonstrated a full range of motion in the wrists bilaterally and she could perform "stapling activities" upon her return to work. AR 96-97, 1482. Also, while Dr. Lundeen's diagnostic studies demonstrated that Plaintiff's "emg/nerve conduction studies were normal except for some occasional denervation activities," and her x-rays of her back and right foot and ankle, showed mild issues but were "otherwise non-

diagnostic," Dr. Lundeen opined that Plaintiff could not return to work. AR 1479-80. The ALJ was justified in identifying the opinions of Dr. Lundeen that she found contradictory and afford his overall opinions less weight. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion); *Houghton v. Comm'r Soc. Sec. Admin.*, 493 F. App'x 843, 845 (9th Cir. 2012) (holding that ALJ's finding that doctors' opinions were "internally inconsistent, unsupported by their own treatment records or clinical findings, [and] inconsistent with the record as a whole" constituted specific and legitimate bases for discounting them).

Additionally, the ALJ discounted Dr. Lundeen's opinion regarding Plaintiff's functional limitations because they conflicted with Plaintiff's reported activities of daily living. An ALJ properly may consider conflicts between a physician's opinion and a claimant's daily activities. *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (conflicts between treating physician's opinion and claimant's own testimony properly considered by ALJ in rejecting treating physician's opinion); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion). In this instance, the ALJ considered that Plaintiff's admitted daily activities including using the computer, driving, washing dishes, doing her own laundry, and watching television for two hours a day, was inconsistent with Dr. Lundeen's assertions of significant hand, arm, and neck limitations. AR 97, 124-36, 471-72.

Finally, instead of relying on Dr. Lundeen's unsupported opinion, the ALJ assigned greater weight to the opinions of the consultative examiner, the State agency reviewing physicians, and Plaintiff's own treating physician, all of which were more consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician with specific, legitimate reasons for doing so), *citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Plaintiff's treating physician, Dr. Johnson, opined on December 28, 2012 that she could return to work "Without Restrictions." AR 1445. *See*

*Crane v. Shalala*, 76 F.3d 251, 253-54 (9th Cir. 1996) (treating physician's opinion that claimant was fully employable may alone constitute substantial evidence). Examining physician, Dr. Wagner, found Plaintiff's physical examination and the overall medical evidence so lacking that he opined that Plaintiff had no medically determinable functional limitations beyond a maximum lifting ability of 50 pounds. AR 1239. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant). Moreover, the three state agency physicians opined that Plaintiff could generally perform functions associated with light work. AR 161, 250, 918-19.

The above well supported findings were all in addition to the ALJ's opinion regarding the surveillance video—taken just six months before Plaintiff's disability onset date—that directly contradicted Plaintiff's allegations of disabling neck, back, hand, and knee pain. The ALJ then articulated other specific and legitimate reasons for rejecting Dr. Lundeen's opinion. Based on a review of the record, the Court concludes that the ALJ adequately evaluated the medical record. Accordingly, the Court will not reverse or remand the ALJ's decision for failure to credit Dr. Lundeen's medical opinion.

**2. The Appeals Council Properly Addressed Later Submitted Evidence**

In her second issue, Plaintiff argues that the Appeals Council erred in failing to incorporate additional evidence she submitted in support of her knee pain. (Doc. 19 at 4). The Court disagrees.

**A. Newly Submitted Evidence**

After the ALJ issued a decision denying benefits, Plaintiff submitted additional records to the Appeals Council. AR 2. The Appeals Council considered some of the new evidence that Plaintiff submitted, but it declined to consider other evidence presented by Plaintiff. AR 2. The Appeals Council considered an x-ray report dated August 27, 2013 and made it part of the administrative record. AR 3, 1485. In reviewing this evidence, the Appeals Council stated that the x-ray showed Plaintiff's right knee was within normal limits based on three views. AR 2.

The Appeals Council also "looked at" several radiology reports of Plaintiff's MRI's and treatment notes from Plaintiff's subsequent knee surgeries. On October 31, 2014, Plaintiff had knee surgery to repair a tear of her meniscus in her left knee. AR 15, 36, 51, 58. On June 24, 2014 and

April 7, 2015, Plaintiff also had a procedure to remove damaged tissue from her right knee. AR 38. In declining to consider this remaining evidence, the Appeals Council stated, "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council ... We found that this information does not provide a basis for changing the Administrative Law Judge's decision." AR 2. Therefore, it did not affect the decision about whether Plaintiff was disabled beginning on or before December 24, 2013. AR 2. Plaintiff was advised that if she wanted to be considered for disability after December 24, 2013, she would need to apply again. AR 2.

### B.    Legal Standard

Social Security regulations permit claimants to submit new and material evidence to the Appeals Council and require the council to consider that evidence in determining whether to review the ALJ's decision. *See Brewes v. Comm'r of Soc. Sec. Admin*, 682 F.3d 1157, 1162 (9th Cir. 2012). If new and material evidence is submitted after the ALJ's decision, the Appeals Council shall consider such evidence "only where it relates to the period on or before the date of the [ALJ] hearing decision." *See* 20 C.F.R. § 404.970(b). The Appeals Council will overturn an ALJ's decision only when it determines, after a review of the entire record, including the new and material evidence, that the decision is contrary to the weight of the evidence. *Id.*; *see also Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (*citing Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir.1990), *overruled on other grounds by Bunnell v. Sullivan*, 947 F.2d 341, 342 (9th Cir. 1991) (en banc)). Moreover, in the Ninth Circuit, where a claimant has submitted additional materials to the Appeals Council in requesting review of the ALJ's decision, the district court may consider the new evidence "because the Appeals Council addressed them in the context of denying [the claimant's] request for review." *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (*citing Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir. 1993)).

This Court "[does] not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes*, 682 F.3d at 1161. When, however, the Appeals Council fails to consider new and material evidence as required, remand to the ALJ is appropriate so that she can reconsider her decision in light of the additional evidence. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th

11

Cir. 2011). To justify remand, a claimant must show that the evidence is both new and material to determining her disability and that she had good cause for having failed to produce that evidence earlier. *See* 42 U.S.C. § 405(g); *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). "New evidence is material if it bears directly and substantially on the matter in dispute and if there is a reasonable possibility that the new evidence would have changed the outcome of the determination." *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (as amended) (internal quotations, ellipses, brackets, and citation omitted).

### C. Analysis

The Court is not persuaded by Plaintiff's contentions regarding her later submitted evidence. First, Plaintiff's MRI records are neither material nor probative of Plaintiff's condition when the ALJ issued her decision. "To be material under section 405(g), the new evidence must bear 'directly and substantially on the matter in dispute.'" *Mayes*, 276 F.3d at 462 (*quoting Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). In this situation, the Appeals Council looked at the additional MRI evidence, but declined to incorporate that MRI evidence into the record because it did not relate to the relevant time period. This was not error.

Here, the ALJ's decision was issued on February 28, 2014. AR 102. Plaintiff submitted additional evidence of MRI's and subsequent knee surgeries dated between May 16, 2014 to April 7, 2015. Beginning on May 16, 2014, three months after the ALJ's hearing, Plaintiff had an MRI performed on her right knee because of "[p]rogressive knee pain." AR 72. Plaintiff's physician identified a tear and debris in her knee and scheduled a surgery for June 24, 2014. AR 62. On August 12, 2014, Plaintiff had an MRI of her left knee. Her physician stated that "this is her first time she has been evaluated for left knee" pain. AR 51. She had surgery on her left knee on October 30, 2014. AR 48. She later suffered a new knee injury on her left knee in December 2014, nearly ten months after the ALJ's decision. AR 45-46 ("doing very well until December 23rd when she was walking fast and twisted to get into her desk and felt a pop in her knee. Since then it has been difficult to walk"). Her physician opined that her injury was "possible inflammation from that event versus further injury." AR 46.

Although Plaintiff argues that this additional evidence demonstrates severe pain dating back to her 2009 car accident, the treatment notes from her physicians all relate to Plaintiff's condition after the date of the ALJ's decision. This conclusion does not rest on the fact that the records were signed after the date of the ALJ's decision. Rather, these medical records relate to Plaintiff's condition on the date signed and do not purport to be retrospective in nature. At most, Plaintiff's MRI's and subsequent surgeries may support a worsening of Plaintiff's condition after the decision issued in this action. See AR 51 (treatment note over five months after the ALJS's decision stating that this is Plaintiff's first evaluation for knee pain). As the Appeals Council stated, Plaintiff would be required to file a new claim for benefits to introduce this evidence. *See* 20 C.F.R. § 404.970(b); *see also Blake-Norman v. Colvin*, 2014 U.S. Dist. LEXIS 165115, 2014 WL 6682629, at *12 (C.D. Cal. Nov. 25, 2014) (rejecting plaintiff's contention that the Appeals Council erred in excluding additional materials because the "hearing test" included in the materials at issue postdated the ALJ's decision). The Appeals Council was therefore not required to incorporate those exhibits into the record.

With respect to the single x-ray of Plaintiff's knee reviewed and considered by the Appeals Council, this added evidence also does not warrant reversal. The x-ray of Plaintiff's right knee showed that her knee was within normal limits with no signs of impairment. AR 74. Thus, this new evidence incorporated into the Administrative Record by the Appeals Council does not undercut the ALJ's reasoning, and the ALJ's decision remains supported by substantial evidence. Accordingly, a remand or reversal is not warranted on this issue.

**3.    The ALJ Gave Sufficient Reasons to Discount Plaintiff's Credibility**

Plaintiff also argues that the ALJ erred in rejecting her credibility. (Doc. 19 at 3-4). Specifically, Plaintiff challenges the ALJ's reliance on the "sub rosa" video filed against her in her workers' compensation claim. Additionally, Plaintiff contends that the ALJ's personal observations at the hearing were insufficient to challenge the severity of her underlying complaints. Plaintiff's arguments do not undermine the ALJ's credibility finding.

///

///

///

### A. Legal Standard

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.,* 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.; Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."). Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and 3) the applicant's daily activities. *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996). Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### B. Analysis

At the first step of the credibility analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 100. However, at the second step of the analysis, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. AR 100. In so doing, the ALJ provided several clear and convincing reasons for rejecting Plaintiff's excessive pain testimony. In finding Plaintiff's testimony not fully credible, the ALJ properly considered, among other things, documented evidence of Plaintiff's symptom exaggeration and evidence demonstrating Plaintiff's lack of candor as documented in the surveillance video where she engaged in activities inconsistent with her allegations. These were clear and convincing reasons to reject Plaintiff's credibility as follows.

First, the ALJ found that Plaintiff's statements lacked credibility based on evidence of Plaintiff's symptom exaggeration. In August 2011, psychologist Jonathan Dunn performed a psychological evaluation of Plaintiff. AR 927. Dunn stated that Plaintiff's Wahler Physical Symptom Inventory score suggested that she was likely exaggerating her perceptions, which "underscored the unlikelihood that all her physical complaints were based on genuine organic pathology." AR 925. The ALJ found that this "documented symptom exaggeration significantly detract[ed] from the credibility of [Plaintiff's] allegations." AR 100, 925. An ALJ may consider evidence that plaintiff is exaggerating symptoms in making a credibility determination. *See Williamson v. Commissioner Of Social Security*, 438 Fed. Appx. 609, 611 (9th Cir. 2011) ("proper for the ALJ to discount Williamson's testimony based on Dr. Eckstein's observation that there was reason to suspect that Williamson exaggerated her symptoms"); *Tonapetyan*, 242 F.3d at 1148 (holding credibility determination based on tendency to exaggerate supported by substantial evidence); *Thomas*, 278 F.3d at 959 ("efforts to impede accurate testing of her limitations supports the ALJ's determinations as to her lack of credibility").

Plaintiff's related argument that the ALJ had an affirmative duty to question her about her performance on the Wahler test is equally meritless. In Plaintiff's view, the ALJ should have asked her during the hearing about why she tested "in this manner," but Plaintiff cites no relevant authority for the existence of this duty. (Doc. 19 at 4). Social Security law has no affirmative requirement that an ALJ directly confront a claimant with discrepancies between clinical testing and her symptom allegations. Rather, it has been repeatedly held that an inconsistency between testimony and the record is a valid basis for discounting a claimant's credibility. *See Smolen*, 80 F.3d at 1284.

Next, the circumstances derived from Plaintiff's secret surveillance video appropriately undermined her credibility. Contrary to Plaintiff's allegations of disabling symptoms, Plaintiff was seen on a covert surveillance video actively participating in a garage sale. AR 100. Despite Plaintiff's contentions explaining her behavior during the garage sale, the ALJ was entitled to consider such evidence in determining whether Plaintiff's overall claim of disabling symptoms should be believed. *See Tonapetyan,* 242 F.3d at 1148 ("In assessing the claimant's credibility, the ALJ may use 'ordinary

techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony."). The fact that the video was taken in July 2011—after Plaintiff's 2009 car accident but shortly before her alleged January 9, 2012 disability onset date is inapposite. "[I]f a claimant . . . is found to have been less than candid in other aspects of [her] testimony, that may be properly taken into account in determining whether or not [her] claim of disabling pain should be believed." *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Finally, although Plaintiff claims that the ALJ based her decision, in part, on observations she made of Plaintiff walking into the hearing room and sitting through the hearing, there is nothing in the ALJ's decision to indicate that this was a consideration in this case. AR 90-102. (Doc. 19 at 5). Despite Plaintiff's statements in her brief that the ALJ rejected her credibility based on her demeanor during the hearing, the ALJ did not comment on "witnessing Plaintiff take 10 or so steps into the courtroom and 10 or so steps as [she] walked out of the courtroom." (Doc. 19 at 5). Nor did the ALJ comment on Plaintiff's ability to sit through "a hearing that took approximately 45 minutes, not a usual 8-hour work day." (Doc. 19 at 5). Nevertheless, Plaintiff is advised that an ALJ's "personal observations may be used .... in the overall evaluation of the credibility of the individual's statements." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Ultimately however, the ALJ's opinion is devoid of any commentary on the ALJ's personal observations of Plaintiff during the hearing. Accordingly, there is no error on the issue for the Court to review.

Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by substantial evidence in the record, this Court does not second-guess that decision. *Fair*, 885 F.2d at 604. By considering Plaintiff's daily activities, symptom exaggeration, and lack of candor in prior proceedings, the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints. Thus, the ALJ satisfied her burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

### 4. Step Five Analysis

Lastly, Plaintiff argues that "given her work restrictions" the ALJ erred at Step Five in concluding that she can perform work as it exists in the national economy. (Doc. 19 at 4). This is not so.

Plaintiff's contention that the ALJ's step five analysis is flawed essentially restates her argument that the ALJ improperly discredited her testimony regarding the limiting effects of her symptoms. Plaintiff does not argue that the hypothetical posed to the VE failed to include all the limitations found in her RFC, instead Plaintiff contends that if all of her alleged limitations were considered, there would be no jobs available. Because substantial evidence supports the ALJ's RFC finding, the hypothetical posed to the VE properly encompassed all of Plaintiff's limitations. *Thomas*, 278 F.3d at 956 ("In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental, supported by the record"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record"). Although Plaintiff argues for a different reading of the record, the ALJ's interpretation of the evidence was rational and should be upheld. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). On this record, the reliance by the ALJ on the vocational expert's testimony was proper.

### CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgement in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Leticia Contreras.
IT IS SO ORDERED.

Dated: **March 15, 2017**      /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE